**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DONALD VANORDEN, | Civil Action No. 2:11-2642-SDW |
| Plaintiff, | |
| v. | **OPINION** |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | June 7, 2012 |
| Defendant. | |

**WIGENTON**, District Judge.

Before the court is plaintiff Donald Vanorden's ("Plaintiff" or "Vanorden") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Michal L. Lissek's ("ALJ") denial of Plaintiff's claim for Supplemental Security Income ("SSI") under 42 U.S.C. § 405(g). The Commissioner, pursuant to Local Civil Rule 9.1, seeks a judgment affirming the final decision that Plaintiff is not entitled to SSI benefits under the Social Security Act ("Act").

This court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(g). Venue is proper under 28 U.S.C. § 1391(b).

This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, this Court **AFFIRMS** the ALJ's Decision ("ALJ's Decision").

**FACTUAL AND PROCEDURAL HISTORY**

On September 13, 2007, Plaintiff filed an application for SSI benefits alleging that he had been unable to work since July 8, 2002 due to his medical conditions. (R. at 12.)[1] The application was initially denied and then later denied upon reconsideration. (*Id*.) Subsequently, on May 28, 2008, Plaintiff filed a written request for a hearing. (*Id*.)

On August 13, 2009, a hearing was conducted before the ALJ. (*Id*. at 19-39.) On August 27, 2009, the ALJ denied Plaintiff's application in the ALJ's Decision. (*Id*. at 12-18.) Thereafter, Plaintiff requested review of the ALJ's Decision by the Appeals Council, and on March 7, 2011, the Appeals Council affirmed the ALJ's Decision. (*Id*. at 1-3.) On May 13, 2011, Plaintiff filed an appeal with this Court challenging the denial of his request for SSI benefits. (*See* Compl.)

**A. Background and Employment History**

Plaintiff was born in 1962. Plaintiff was 40 years old at the time of his injury, which he claims to have sustained on or around July 8, 2002.[2] (R. at 17, 24, 26.) From 1979 to 1988, after graduating high school, Plaintiff worked in the warehouse of a furniture company and delivered furniture for approximately nine years. (*Id*. at 24, 131-32.) From 1989 to 1999, Plaintiff worked for multiple food companies, where he was employed as a driver's helper and stocked shelves at various supermarkets. (*Id*. at 131, 133-34.) From 2000 to 2002, Plaintiff worked for Shop Rite Supermarket,[3] where he stocked shelves at night. (*Id*. at 25, 135.) At this job, he frequently lifted fifty pounds or more, and occasionally had to lift objects up to eight to ninety pounds by himself, which he stated was "less strenuous" than delivering furniture. (*Id*. at 25, 135.)

---

[1] The ALJ's Decision is in the record ("R.") on pages 12-18.
[2] In Plaintiff's testimony to the ALJ, regarding when he experienced the back injury, Plaintiff stated "I think, [ ] the 8th, or a couple of days before maybe. I don't know, I went right away to the doctor." (R. at 26.)
[3] In the transcript of the hearing, "Rite" is spelled "Right." (R. at 24; *see also*, R. at 25). Whereas, in the doctors' reports in the record, "Rite" is spelled "Rite." (R. at 151-154.).

Plaintiff last worked on July 8, 2002, when he claims to have sustained an injury to his back. (*Id*. at 26.) The injury occurred when Plaintiff was lifting a "heavy box" at which point Plaintiff experienced "a snap in [his] back [and] fell to the ground," landing on his knees. (*Id*. at 27.) Plaintiff testified that he attempted to go back to work following the injury, but he was fired. (*Id*.)

### B. Medical History

After Plaintiff was injured, on July 26, 2002, he sought medical care for his lower back at Multi-Care, a health center. (*Id*. at 151.) The examining physician at Multi-Care diagnosed Plaintiff with a lumbar strain and prescribed medication. (*Id*. at 152.) The doctor instructed Plaintiff to limit his bending and restricted him to lifting objects that did not exceed ten pounds. (*Id*.)

On August 9, 2002, Plaintiff went for a second visit and the diagnosis remained unchanged, but the doctor suggested that Plaintiff take two weeks off from work as he claimed he had been unable to cope with work duties. (*Id*.) On August 27, 2002, Plaintiff went for a reevaluation. (*Id.* at 152-53.) During this visit, the doctor reported that Plaintiff's lumbar strain was improving, however, since Plaintiff still had limitations, the doctor suggested that he continue taking his medications and receive therapy for two more weeks. (*Id*. at 153.) Plaintiff was also instructed to avoid repetitive bending, as well as lifting anything over twenty pounds, and pushing or pulling anything over thirty-five pounds. (*Id*.) Plaintiff was further instructed to avoid ladders. (*Id*.)

On September 3, 2002, Plaintiff returned to Multi-Care complaining of pain and other symptoms, including difficulty sleeping. (*Id*. at 154.) The examining physician ordered an MRI for Plaintiff and a follow-up visit. (*Id*.) On September 6, 2002, Plaintiff had a MRI for his lumbosacral spine, and the examination revealed "moderate hypertrophic degenerative changes

3

with disc space narrowing at the L3/L4, L4/L5 and L5-S1 levels," along with small disc herniations present at the L4-L5 and L5-S1 levels. (*Id*. 261.)

On September 18, 2002, Plaintiff was examined by Dr. Gregory Gallick ("Dr. Gallick"). (*Id*. at 15, 258.) Upon examination, Dr. Gallick found no tenderness, muscle spasms, trigger points, redness, or swelling. (*Id*. at 15, 259.) Further, Dr. Gallick provided: "[h]is straight leg raise was negative and neurovascular status of both lower extremities, to include motor, sensory and reflexes were normal. Babinski's were downward going and no clonus was present." (*Id*.) Plaintiff was able to walk normally without the assistance of crutches, orthopedics, or a cane. (*Id*.) He could forward flex approximately sixty-five degrees and his fingertips were around a foot from the ground. Plaintiff had good lateral bend and rotation, but refused to have x-rays done. (*Id*.) Dr. Gallick noted that Plaintiff "does have a past medical history significant for injuring his back in the 1980's when he was delivering furniture and his back has never been great ever since" but "[h]e has been doing this job at Shop Rite for about the last nine months and his back has not bothered him." (*Id.* at 258.)

Upon evaluation of Plaintiff's MRI, Dr. Gallick noted that Plaintiff's disc herniations were not significantly compressing his thecal sac, nor were they narrowing his neural foramen or causing any damage to his exiting nerve roots. (*Id*. at 16, 259.) In Dr. Gallick's opinion, the MRI was essentially benign, and the degenerative changes were more likely related to an accident that Plaintiff had in the 1980s when he injured his back. (*Id*.) Dr. Gallick opined that Plaintiff was "at maximum medical benefits from treatment," and he had received appropriate care from previous doctors. (*Id*. at 259.)

On August 4, 2005, Plaintiff commenced treatment with Dr. James Aragona ("Dr. Aragona"), an orthopedic surgeon. (*Id*. at 16, 255.) Dr. Aragona prescribed epidural blocks and physical therapy for Plaintiff to manage his chronic back pain and multilevel lumbosacral

4

radiculopathy. (*Id*.) Dr. Aragona also encouraged Plaintiff to join the workforce, "doing a job not involving his back." (*Id*.; *see also*, R. at 255.)

On October 7, 2005, Plaintiff received another MRI which showed that there was "moderate hypertonic degenerative changes with facet joint arthropathy and disc desiccation at the three lower lumber levels" and "central subligamentous disc herniations [ ] present at L3/4, L4/5 and L5/S1." (*Id.* at 245.) Further, L3/4 had slightly evolved since the previous examination in September 6, 2002,[4] while L4/5 and L5/S1 exhibited no significant change. (*Id.*) There was also "moderate[] impressing on the anterior thecal sac and mild[] narrowing [of] the lateral recesses at these levels." (*Id.*)  An electro diagnostic examination was also conducted and the results confirmed the neuropathy of the legs, and multilevel lumbosacral radiculopathy. (*Id.* at 242-44.)

On March 7, 2006, Plaintiff was admitted to Union Hospital for severe lower back pain and he underwent surgery for decompression, fixation and fusion of his L3 through L5. (*Id*. at 184-86.)  Plaintiff had laminectomies on his L3-L4 and L4-L5 with bilateral foraminotomy and disc excisions. (*Id*. at 187.)  Further, Plaintiff had a posterior lumbar interbody fusion with the insertion of a pedicle screw and rod fixation at L3-L4 and L4-L5. (*Id.*)  Finally, Plaintiff received autologous and autogenous bone grafts and a bilateral lateral fusion at his L3-L4 and L4-L5 with a right iliac crest bone graft. (*Id*.) After the surgery, Plaintiff received physical therapy at the hospital. (*Id*.)  On March 12, 2006, Plaintiff was discharged with instructions to walk everyday and to avoid heavy lifting or bending. (*Id*.)

On November 7, 2006, Dr. Aragona had a follow-up with Plaintiff where he noted that Plaintiff still had back pain in the morning. (*Id*. at 164.)  Dr. Aragona noted that Plaintiff walked with a cane, but he did not limp. (*Id*.)  Plaintiff had decreased lumbar flexibility, but good strength

---

[4] There is a discrepancy with the actual date of the MRI. According to medical records, the MRI took place on September 6, 2002. (R. at 261.) The ALJ Decision, as well as Dr. Damien's medical report, states the MRI took place in "2003," when in fact it took place in "2002". (R. at 16, 245.).

and intact vascularity. (*Id*.) Plaintiff was encouraged to exercise every other day and to do outside walking. (*Id*.) Dr. Aragona cleared Plaintiff to return to work in early December 2006 "for limited duties such as light retail work or deskwork, [with] no prolonged standing [or] walking, no ladders, no bending, [and] no lifting over 10 pounds." (*Id*.) Plaintiff was prescribed pain medication, but the prescribing physician noted that he "infrequently needed [the medication] for his pain." (*Id*.)

On February 15, 2007, Plaintiff had his second post-operative visit with Dr. Aragona. (*Id*. at 163.) Plaintiff stated that his condition had improved after the operation; however, he still experienced pain in his legs and hips. (*Id*.) Plaintiff was able to walk, had good strength and reflexes, and no atrophy. (*Id*.) Dr. Aragona noted that Plaintiff's lumbar spine did have diminished flexibility, and prescribed Darvocet for the pain since Plaintiff no longer wanted his previous pain medication, Vicodin, and asked to be put on Percocets instead. (*Id.*)

On June 5, 2007, Plaintiff was examined by Dr. Albert Thrower ("Dr. Thrower"). (*Id*. at 161.) In a letter dated June 14, 2007, which included a brief medical history of the Plaintiff, Dr. Thrower stated that Plaintiff complained of pain in his lower back and thighs, and denied "any prior injury or accident." (*Id*.) Dr. Thrower noted that Plaintiff had "moderate restriction of lateral bending and extension," but exhibited normal strength in his legs and had a normal gait. (*Id.*) Additionally, Plaintiff experienced lower back pain when doing straight leg raises. (*Id*.) Dr. Thrower estimated that Plaintiff's disability was "at 11% of partial total" and concluded that Plaintiff was capable of light work. (*Id*. at 162.)

On January 11, 2008, Plaintiff was examined by Dr. Allen Glushakow ("Dr. Glushakow"). (*Id*. at 17, 276.) Dr. Glushakow noted that Plaintiff carried a cane and claimed to have back pain. (*Id*. at 17.) Plaintiff had a limited range of motion. (*Id*.) Plaintiff could do a partial squat, approximately fifty percent and his "straight leg raise testing was positive at seventy degrees

6

bilaterally in the supine position and negative in the sitting position." (*Id*.)  Plaintiff was, however, able to walk on his heels and toes. (*Id*.)  After administering an X-ray, Dr. Glushakow observed the "presence of pedicular screws, a spinal fusion extending from L3 through L5 areas on AP and on the lateral views." (*Id.* at 277.)  Further, Dr. Glushakow stated that the impression on Plaintiff's spine was post-surgery. (*Id.*)

### C. Plaintiff's Testimony

On August 13, 2009, Plaintiff testified before the ALJ.  (*Id*. at 23-39.)  Plaintiff stated that he had not gone back to any doctors after February 15, 2007. (*Id*. at 37.) Plaintiff testified that he felt better after the surgery than he does currently, and "as time went on, [ ] everything progressively just started getting worse [ ]." (*Id*. at 35.)  On a scale of one to ten, Plaintiff claimed his pain on an average day is "close to a nine, eight or nine," while some days it strengthened to "a ten plus." (*Id*. at 37.)  Plaintiff stated that he is unable to lift anything or "reach for anything that's too heavy." (*Id*. at 38.)  Plaintiff further provided that due to the pain in his back he now sits when he washes his feet and legs while showering, and he cannot walk fast. (*Id*. at 38-39.)

**LEGAL STANDARD**

In social security appeals, this Court has plenary review of the legal issues decided by the Commissioner.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  This Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a

7

conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This court is required to give deference to the ALJ's findings if supported by substantial evidence. *Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

**DISCUSSION**

An individual will be considered disabled under this Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C.A. § 423(d)(1)(A). The physical or mental impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A § 423(d)(2)(A). Subjective complaints of pain, alone, cannot be used to conclusively establish disability. 42 U.S.C. § 423(d)(5)(A). A claimant must show that the "medical signs and findings" related to his ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, or physiological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." *Id*.

The Social Security Administration ("SSA") utilizes a five-step sequential analysis to determine disability under the Act. *Cruz*, 244 F. App'x at 480 (*citing* 20 C.F.R. § 404.1520(a)(4)(i)(v)). The United States Supreme Court describes the evaluation process as follows:

> The first two steps involve threshold determinations that the claimant is not presently working and has an impairment which is of the required duration and which significantly limits his ability to work. In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work. If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry. If the claimant cannot qualify under the listings, the analysis proceeds to the fourth and fifth steps. At these steps, the inquiry is whether the claimant can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If the claimant cannot do his past work or other work, he qualifies for benefits.

*Sullivan v. Zebley*, 493 U.S. 521, 525-26, 110 S.Ct. 885 (1990) (citations omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)(v) and 416.920(a)(4)(i)(v).

The burden of persuasion belongs to the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). Once the claimant is able to show that the impairment prevents him from performing his past work, the burden shifts to the Commissioner to demonstrate "that the claimant still retains a residual functional capacity to perform some alternative, substantial, gainful activity present in the national economy." *Id.* (*citing Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)).

In the instant matter, the ALJ denied Plaintiff's request for SSI benefits at step-five, ultimately determining that there are jobs that exist in significant numbers in national economy that the claimant can perform. (R. at 18.) On appeal, Plaintiff argues that the ALJ's final administrative decision was not based on the substantial evidence in the administrative record. (Pl.'s Br. 8.) Plaintiff's argues the following: 1) the ALJ, in finding that Plaintiff was not disabled at step three of the sequential evaluation, did not provide any thought, reason, evidentiary foundation, or explanation for its finding; 2) the ALJ, in determining that the Plaintiff was capable of the full range of sedentary work as defined under 20 C.F.R. §§ 404.1567(a) and 416.967(a), failed to explain his determination of Plaintiff's residual functional capacity ("RFC"), and his decision was at odds with the evidence on record; and 3) the ALJ's pain analysis violated the Commissioner's own policies with respect to taking into consideration subjective evidence from Plaintiff, such as his statements about his symptoms of pain. (*See* Pl.'s Br. 9-36.)

The Commissioner, however, asserts that the ALJ's Decision is supported by substantial evidence in the record and the opinion needs to be read as a whole. (*See generally*, Def.'s Br. 9-19.) The Commissioner argues the following: 1) the ALJ's conclusion in step three of the analysis is supported by substantial evidence; 2) the ALJ properly concluded that "Plaintiff retained the

RFC for a full range of sedentary work," based on both medical and non-medical evidence on the record; 3) The ALJ properly determined that Plaintiff's statements about his back pain were not credible because they were inconsistent with the RFC assessment; and 4) "Plaintiff's ability to perform postural activities did not affect his capacity for the full range of unskilled sedentary work," and therefore, a vocational expert was not necessary. (*See* Def.'s Br. 9-19.) For the reasons expressed below, this Court affirms the ALJ Decision because substantial evidence supports the ALJ's findings and determination.

**Step One**

If Plaintiff is found to be engaged in substantial gainful activity ("SGA"), the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). SGA is work that involves significant physical or mental activities and is done for pay or profit. *See* 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). In the instant matter, the ALJ determined that Plaintiff was not engaged in SGA since July 8, 2002, the date of his alleged injury. (R. at 14.)

**Step Two**

In determining step two, the ALJ must consider all symptoms and the extent to which they can reasonably be accepted with objective medical evidence, as well as, other relevant evidence. *See* 20 C.F.R. §§ 404.1529, 416.929. Under the regulations, an impairment or combination of impairments is "severe" if it significantly restricts the Plaintiff's physical or mental ability to do "basic work activities." In the instant matter, the ALJ determined that the Plaintiff suffered from severe impairment as a result of work injuries, including back and leg pain, and post lumbar fusion and discectomy, which significantly limited Plaintiff's ability to perform basic work activities. (R. at 14.)

**Step Three**

At step three, the ALJ must "compare the claimant's medical evidence to a list of impairments presumed severe enough to negate any gainful work." *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379 (3d Cir. 2004). When Plaintiff's impairments meet or equal a listing, "disability is conclusively established and the claimant is awarded benefits." *Knepp*, 204 F.3d at 85. The Third Circuit requires the ALJ to "fully develop the record and explain his findings at step three." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000). Furthermore, the ALJ is required to issue more than just a conclusory statement that a claimant does not meet the listings. *See Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (*citing Burnett*, 220 F.3d at 119-20). However, the relevant case law "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Padilla v. Comm'r of Soc. Sec.*, No. 09-2890, 2010 WL 2346650 at *5 (D.N.J. June 9, 2010) (*quoting Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).

In the instant matter, the ALJ determined that the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (R. at 14.) Plaintiff argues that the ALJ's finding at step three lacks explanation as to why Plaintiff was not rendered disabled. (Pl.'s Br. 9.) The Commissioner contends that under *Jones v. Barnhart*, "an ALJ's decision, read as a whole, should illustrate that the ALJ considered the appropriate factors in reaching the conclusion that the claimant did not meet the requirements for any listed impairment." (Def.'s Br. 9.) (*citing Jones v. Barnhart*, 364 F.3d 501, 505 (2004). The Commissioner also submits that the Plaintiff did not satisfy the criteria of Listing 1.04A for degenerative disc disease[5] since the Plaintiff did not exhibit muscle atrophy and denied muscle

---

[5] The requirement for degenerative disc disease is "[e]vidence of nerve root compression characterized by neuro-anotomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising (sitting and supine)." 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04A.

12

weakness, the doctor's reports did not indicate significant disc herniations, and clinical observations indicated that Plaintiff had negative leg raising, and normal neurovascular status of the lower extremities, including reflexes and motor strength. (Def.'s Br. 10.) This Court finds that there is substantial evidence in the record to support the ALJ's Decision that Plaintiff was not disabled. "The ALJ must analyze all of the evidence in the record and provide adequate explanations for disregarding or rejecting evidence." *See LaCorte v. Bowen*, 678 F. Supp. 80, 83 (3d Cir. 1998) (*citing Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981). The ALJ considered the totality of the record, and supported its determination with an account of the evidence considered in the ALJ's Decision.

Second, Plaintiff asserts that the ALJ violated the Commissioner's policy of considering all evidence presented, including testimony regarding symptoms such as pain. (Pl.'s Br. 30) (*citing* 20 C.F.R. § 404.1529(c). However, the Commissioner contends that the ALJ properly evaluated Plaintiff's subjective testimony of pain and functional limitations because "the totality of the medical evidence does not corroborate Plaintiff's subjective complaints to the disability alleged." (Def.'s Br. 15.)

The Commissioner issued a protocol which would take into consideration subjective complaints such as pain where the ALJ would consider factors such as:

> (i) [ ] daily activities; (ii) the location, duration, frequency and intensity of [ ] pain or other symptoms; (iiii) precipitating or aggravating factors; (iv) the type, dosage, effectiveness and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [ ] pain of other symptoms; (v) treatment, other than medication, [ ] for relief; (vi) any measured [ ] used to relieve [ ] pain or other symptoms [ ]; and (vii) other factors considering [ ] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c). In *Hartranft*, the court held "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." 181 F.3d at 362 (*citing* 20 C.F.R. § 404.1529); *see also*, *Williams*, *v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (holding that the

burden is on the Plaintiff to prove through medical evidence that he is unable to do work). Accordingly, the Commissioner has discretion to evaluate the credibility of the Plaintiff's testimony about pain and other symptoms and render a judgment about the true extent of Plaintiff's symptomatology based on the medical and non-medical evidence of record. *Williams*, 970 F.2d at 1186-87 ("The fact-finder has an obligation to review all the evidence of record to decide whether or not the claimant's testimony is credible."); *see also*, *LaCorte*, 678 F. Supp. at 84 ("it is within the ALJ's discretion to weigh the medical assessments and to resolve the conflict accordingly"); *Brown v. Schweiker*, 562 F. Supp. 284, 287 (E.D. Pa 1983) ("where the evidence of the severity of the pain is conflicting, the ALJ can, in the exercise of his discretion, consider this rebutting testimony in assessing the claimant's alleged disabling pain.").[6]

The ALJ found that Plaintiff showed an improvement after the surgery as he no longer experienced severe pain, had less stiffness in his back, seldom needed his pain medication, and had not sought medical care for his back problem since February 2007. (R. at 16-17, 164, 169.) The ALJ further noted that Plaintiff testified to walking on a daily basis and spent an average of two hours a day walking or standing, lifted and carried items weighing between five to ten pounds, and partook in everyday activities such as shopping, cooking, socializing with friends and family, doing laundry on a weekly basis, and occasionally visiting Atlantic City. (R. at 16, 31-32, 37, 125-27.) The ALJ determined Plaintiff's subjective claims regarding his symptoms were not credible as they were inconsistent with his RFC assessment and medical evidence. (R. at 15.) This determination is consistent with the record.

Next, if a claimant's impairment does not meet or equal a listed impairment, the ALJ must determine Plaintiff's RFC before proceeding to the fourth step of the analysis. *See* 20 C.F.R. §§

---

[6] Additionally, in the *Brown* case, the court found that although the medical record supported the basis for claimant's pain, the fact that the claimant could "stand, walk, sit, although on a limited basis, as well as his ability to move his upper and lower extremities, negate[d] the constancy and severity of the pains suffered by him." 562 F. Supp. at 287.

404.1520(e), 416.920(e). The RFC will then be used in the fourth step to determine whether the Plaintiff can perform the requirements of his past relevant work. *See id*. In determining Plaintiff's RFC, the ALJ must consider all of the Plaintiff's impairments, even the ones that are deemed not severe. *See* 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. When considering Plaintiff's symptoms, the ALJ must first determine whether there are underlying medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce Plaintiff's pain, or other symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. Further, the ALJ must evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's ability to do basic work activities. *See id*. Whenever statements about intensity, persistence, and limiting effects of Plaintiff's symptoms are not corroborated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire record. *Id*.

Here, the ALJ determined that Plaintiff had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a). (R. at 15.) Sedentary work involves lifting no more than ten pounds at a time, sitting for a significant portion of the work day (about six out of an eight hour work day) and standing or walking (for about two hours of an eight hour work day). 20 C.F.R. §§ 404.1567(a), 416.967(a); Social Security Ruling ("SSR") 96-9p. Additionally, activities such as climbing ladders scaffolds, or ropes, kneeling, crouching, balancing, or crawling, are not required in sedentary work. (*Id.*)

In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1567 and § 416.929." (R. at 15.) The ALJ's Decision was based on several medical assessments, including Dr. Aragona, an orthopedic surgeon who was a treating physician. (*See* R. at 15-17.) The ALJ noted that in September 2002,

15

Dr. Gallick examined Plaintiff and reported that he had "no problems other than low back pain . . . [h]is straight leg raise was negative and neurovascular status of both lower extremities [including] motor, sensory and reflexes, [was] normal." (R. at 15.) Plaintiff walked with a normal gait, did not need crutches or canes, and was able to walk toe and heel and mount the examination table without any discomfort." (*Id.*) Dr. Gallick treated Plaintiff with medication and physical therapy and opined that Plaintiff was receiving the maximum medical care. (*Id.* at 15-16.) In August 2005, Dr. Aragona reported that Plaintiff's reflexes, strength and sensation were intact, and there was no muscular atrophy; and, in the ALJ Decision it is noted that Dr. Aragona encouraged Plaintiff to join the workforce, engaging in employment which did not involve his back. (R. at 16; *see also*, R. at 255). The ALJ also noted that in November 2006, Dr. Aragona reported that Plaintiff could engage in light duty work as early as December 11, 2006. (R. at 16.) Plaintiff was limited to desk work, but no work involving prolonged standing or walking, ladders or bending, and no lifting over ten pounds. (*Id.*; *see also*, R. at 165). In June 2007, Dr. Thrower estimated that Plaintiff had a total of eleven percent disability, and opined that claimant was capable of light work. (R. at 17, 162.)[7] In light of the medical evidence relied upon by the ALJ, this Court concludes that the ALJ properly determined Plaintiff's RFC.

**Step Four**

At step four the Commissioner must determine whether Plaintiff has the RFC to perform his past relevant work.[8] *See* 20 C.F.R. § 404.1520(f). If Plaintiff does not have the RFC to perform any past relevant work, the analysis proceeds to the fifth step. 20 C.F.R. §§ 404.1560, 416.960.

---

[7] The ALJ's Decision lists this finding as by Dr. Aragona, but the content is correct.
[8] The term "past relevant work" means work performed, either as Plaintiff performed it or as it is generally performed in the national economy, within the last fifteen years or fifteen years prior to the date that disability must be established. 20 C.F.R. §§ 404.1560(b), 416.960(b).

In step four, the ALJ properly determined that Plaintiff was unable to perform any past relevant work pursuant to 20 C.F.R. §§ 404.1565, 416.965. Plaintiff's past employment involved stocking shelves at a grocery store, which required heavy work. (R. at 17.) Since the Plaintiff is limited to sedentary work, the ALJ correctly rendered Plaintiff unable to perform his past relevant work.

**Step Five**

At the final step of the evaluation process the ALJ must determine whether Plaintiff is able to perform any other work, taking into consideration his RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines ("MVG"), 20 C.F.R Part 404, Subpart P, Appendix 2. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). If Plaintiff is able to do other work then he is not disabled. *Id*. If Plaintiff is unable to do other work and meets the duration requirement, he is disabled. *Id*. The ALJ bears the burden of proof at this step. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Kangas*, 823 F.2d at 777. The SSA is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that Plaintiff can perform. *See* 20 C.F.R. §§ 404.1512(g), 416.912(g); *See also* 20 C.F.R. §§ 404.1560(c), 416.960(c).

The ALJ must first consider whether Plaintiff has exertional and/or nonexertional limitations. *See* 20 C.F.R. §§ 404.1569(a), 416.969(a). A limitation is exertional if it affects the Plaintiff's "ability to meet the strength demands of [a job]" such as "sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id*. A limitation is nonexertional if it affects the Plaintiff's "ability to meet the demands of [a job] other than strength demands." *Id*. If the limitations are solely exertional, the ALJ can use medical-vocational guidelines to determine whether Plaintiff can perform any other job in the national economy. *See* 20 C.F.R. pt. 404, Subpart P, app. 2. However, if there are both exertional and nonexertional limitations, the ALJ cannot only depend

17

on the guidelines to determine whether there are jobs in the national economy that Plaintiff can perform. *See Sykes v. Apfel*, 228 F.3d 259, 269 (3d Cir. 2000).

Plaintiff, citing *Metullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990), notes that "[t]here must be medical evidence to disprove a claimant's testimony regarding pain." (Pl.'s Br. 32.) Here, the ALJ did not find Plaintiff's assertions regarding pain credible considering his range of activities and as the record demonstrates that when prescribed pain medication Plaintiff took it infrequently because he did not need it. (R. at 15, 164.) According to Plaintiff's testimony, he has not sought medical care since February 2007, nor was he taking any medication for his back pain at the time of his hearing. (*Id.* at 17, 29.)

Further, the ALJ must make an "assessment of factors such as the type and extent of the individual's limitations or restrictions and the extent of the erosion of the occupational base." 20 C.F.R. pt. 404, subpart P, app. 2 § 201.00(h)(3). This finding "requires an individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the total number of jobs to which the individual may be able to adjust." *Id*.

Here, the ALJ found that Plaintiff, under sections 404.1563 and 416.963(c) is a younger person (under the age of 50), who had the RFC to perform the full range of sedentary work as defined in 20 C.F.R §§ 404.1567(a), 416.967(a). Considering his age, education, and work experience, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 18.) Therefore, the ALJ found Plaintiff "not disabled" as directed by Medical Vocational Rules ("MVR") 201.21 and 201.28. Additionally, the ALJ noted that "transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of 'not disabled' . . . ." (R. at 17) (*citing* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

Finally, Plaintiff argues that the ALJ erred by not requiring the testimony of a vocational expert at step five. (Pl.'s Br. 36). Under *Sykes*, a vocational expert is required when Plaintiff's nonexertional impairments limits his occupational base. 228 F.3d at 261. Here, the medical record indicates exertional and postural limitations, and there is no medical record of nonexertional limitations affecting Plaintiff's ability to perform a full range of sedentary work, or limiting his sedentary occupational base. (R. at 280, 290; *see also*, R. at 298; *see generally*, R. at 151-298.) The ALJ determined that Plaintiff was in the 45-49 age range, which put him in the younger individual category, he had a high school degree, and based on his medical records, Plaintiff had significant functionality which allowed him to perform sedentary activities, and his nonexertional limitations did not compromise the full range of unskilled activity. (R. at 17; *see also*, Def.'s Br. 19.) Plaintiff's RFC for the full range of sedentary work, in conjunction with his age, education, and work experience led the ALJ to the finding of "not disabled" under MVR 201.21 and 201.28. (R. at 18.) The ALJ relied on and noted evidence which demonstrated that Plaintiff was capable of a full range of sedentary work and his postural impairments did not pose a nonexertional limitation, and thus, after reviewing the guidelines found Plaintiff "not disabled" without the consultation of a vocational expert.

**CONCLUSION**

For the foregoing reasons, the Court holds that substantial evidence supports the ALJ's Decision. Accordingly, the Court **AFFIRMS** the ALJ's Decision.

                                                  s/Susan D. Wigenton, U.S.D.J.

Orig: Clerk
cc: Parties